Gary ROBERTS, Appellant,

v.

STATE of Missouri, Respondent.

No. SC 89245.

Supreme Court of Missouri,
En Banc.

Feb. 10, 2009.

Jessica M. Hathaway, St. Louis, for Appellant.

Christopher A. Koster, Atty. Gen., Jamie P. Rasmussen, Asst. Atty. Gen., for Respondent.

MARY R. RUSSELL, Judge.

Gary Roberts ("Movant") appeals from a judgment overruling his Rule 24.035 motion for post-conviction relief without an evidentiary hearing.[1] This Court finds that the motion court erred in overruling his motion without an evidentiary hearing. The motion court's judgment is reversed, and the cause is remanded.

## I. Background

As part of a group guilty plea,[2] Movant pleaded guilty to two counts of possession

---

1. This case was transferred after disposition by the court of appeals. Jurisdiction is vested in this Court pursuant to Missouri Constitution article V, section 10.

2. Movant was one of eight unrelated criminal defendants entering pleas. A ninth defendant was excused from the group for further consideration of the voluntariness of statements she had made to police.

of a controlled substance in violation of section 195.202, RSMo 2000.[3] Before his plea hearing, his counsel sent him a note stating: "I got you an offer for [14] years with no opposition to your receiving drug and alcohol treatment."[4] At the plea hearing, the State noted that it did not plan to oppose institutional treatment for Movant *if it was recommended*. Movant, along with the other group plea defendants, indicated that he understood his plea, and his counsel did not object to the State's description of the plea. Ultimately, however, Movant was not recommended for institutional treatment. He was sentenced to two consecutive seven-year terms of imprisonment. He expressed no dissatisfaction with his attorney at the time of his sentencing.

Movant timely sought post-conviction relief under Rule 24.035. He argued that his plea was not entered voluntarily because the State altered its agreement to not oppose his entering an institutional treatment program. He claimed he was prejudiced when the State changed the terms of his plea agreement by adding the caveat *if recommended*. He also asserted that his counsel was ineffective for failing to object to the State's mischaracterization of the plea agreement or for failing to request withdrawal of the plea.

The motion court rejected Movant's request for post-conviction relief without an evidentiary hearing. It found that his claims were "utterly without merit" and "refuted by the record" because he had indicated at the group plea that he understood his plea and had no questions about it. The motion court also found that the plea agreement was honored as Movant

understood it, such that there was no need for his counsel to object to it or request that it be withdrawn.

## II. Standard of review

■■■ This Court's review of a denial of a post-conviction motion under Rule 24.035 is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 24.035(k); *Soto v. State*, 226 S.W.3d 164, 166 (Mo. banc 2007). The motion court's findings and conclusions are clearly erroneous only if, after review of the record, the appellate court is left with the definite and firm impression that a mistake has been made. *Soto*, 226 S.W.3d at 166. Movant has the burden to show by a preponderance of the evidence that the motion court clearly erred in its ruling. *Melton v. State*, 260 S.W.3d 882, 885 (Mo.App.2008).

■■■ To show he was entitled to an evidentiary hearing on his Rule 24.035 motion, Movant must show that (1) he alleged facts, not conclusions, warranting relief; (2) the facts alleged raise matters not refuted by the files and record of his case; and (3) the matters complained of resulted in prejudice to him. *Wilkes v. State*, 82 S.W.3d 925, 928 (Mo. banc 2002). "An evidentiary hearing may only be denied when the record *conclusively* shows that the movant is not entitled to relief." *Id.* (citing Rule 29.15(h), which is the counterpart to Rule 24.035(h), the rule applicable to Rule 24.035 motions).

## III. Movant is entitled to an evidentiary hearing based on his allegations that his counsel was ineffective

Movant argues that he was entitled to an evidentiary hearing on his postconvic-

---

3. Count I related to possession of methamphetamine and Count II related to possession of diazepam, an anti-anxiety medication commonly known as Valium.

4. Movant sought to participate in institutional treatment pursuant to section 559.115, RSMo Supp.2008, which provides an opportunity for probation if an offender successfully completes drug treatment.

tion motion because he alleged facts that, if true, would demonstrate that his counsel was ineffective for failing to object to the State's addition of the caveat "if recommended" to his plea agreement or for failing to have his plea withdrawn based on the State's alteration of the plea terms.

▇▇▇ Movant can prevail on this claim of ineffective assistance of counsel if he shows that his counsel's representation fell below an objective standard of reasonableness and that, as a result, he was prejudiced. *Stuart v. State*, 263 S.W.3d 755, 757 (Mo.App.2008). He "must show, but for the conduct of his [plea counsel] about which he complains, he would not have pleaded guilty but would have insisted on going to trial." *Id.* (internal citations omitted). After his negotiated plea of guilty, Movant's "claim of ineffective assistance of counsel is immaterial except to the extent it impinges upon the voluntariness and knowledge with which the guilty plea was made." *Id.* (internal citations omitted).

▇▇▇ A plea must be a voluntary expression of the defendant's choice and a knowing and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences of the act. *State v. Hunter*, 840 S.W.2d 850, 861 (Mo. banc 1992). "A plea of guilty is not made voluntarily if the defendant is misled, or is induced to plead guilty by fraud or mistake, by misapprehension, fear, persuasion, or the holding out of hopes which prove to be false or ill founded." *Bequette v. State*, 161 S.W.3d 905, 907–08 (Mo.App.2005) (internal citations omitted).

▇▇▇ Plea agreements should be the product of fair negotiations and should meet reasonable expectations of both the

prosecution and the defendant. *See Schellert v. State*, 569 S.W.2d 735, 739 (Mo. banc 1978). " '[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.' " *Id.* at 738 (quoting *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)). If the prosecutor fails to fulfill a promise that induced a post-conviction movant's guilty plea, the movant is entitled to relief. *North v. State*, 878 S.W.2d 66, 67 (Mo.App.1994).

▇▇▇ Movant alleges that his plea was rendered unknowingly because the State altered the specifics of its plea agreement with him at the plea hearing. He alleges that he understood that the State would "stand silent" about his entering an institutional treatment program, but he argues that it instead highlighted that Movant was not recommended for treatment. The prosecutor's comments stating that institutional treatment was not opposed *if it was recommended* could be taken as statements in opposition because Movant *was not recommended* for institutional treatment.

Movant contends that his counsel failed to act with the customary skill and diligence that a reasonably competent attorney would have demonstrated after the State mischaracterized his plea agreement. He argues that an effective counsel would have objected or sought withdrawal of the plea.

▇▇▇ Movant suggests that he was confused by the State's characterization of his plea agreement because his plea was entered as part of a group guilty plea with eight other unrelated defendants.[5] He

---

**5.** Group pleas are used as a time-saving mechanism in some of Missouri's circuit courts, although the use of group pleas has

been criticized repeatedly by the court of appeals. *See Castor v. State*, 245 S.W.3d 909, 915 n. 8 (Mo.App.2008) (noting that the court

highlights that his counsel simultaneously was representing six of the unrelated defendants at this group plea proceeding. There is no doubt that group plea proceedings like the one in which Movant's plea was entered unnecessarily increase the opportunities for mistakes or confusion. And, in the context of such a group plea proceeding, minor alterations to the terms of a plea agreement might be missed or misunderstood by defendants or counsel. Absent a group plea setting, Movant would have little room to assert confusion about his plea.

Rule 24.035(h) instructs that a motion court should deny a post-conviction movant an evidentiary hearing if the record *conclusively* shows he is not entitled to relief. The record in Movant's case, however, does not show conclusively he was not entitled to relief. Movant has sufficiently pleaded facts that, if true, support his allegations that his counsel was ineffective for failing to object or seek withdrawal of his plea after there was a discrepancy between the plea negotiation his counsel had informed him about prior to his plea hearing and the prosecutor's presentation of the plea arrangement in court. He has sufficiently pleaded that his counsel's alleged failures impacted the voluntariness of his plea. As such, this Court finds that the motion court clearly erred in denying Movant an evidentiary hearing in this case.[6]

## IV. Conclusion

The motion court's judgment is reversed, and the cause is remanded.

STITH, TEITELMAN, WOLFF, BRECKENRIDGE and FISCHER, JJ., concur.

PRICE, J., dissents in separate opinion filed.

## DISSENTING OPINION

### WILLIAM RAY PRICE, JR., Judge.

I respectfully dissent. The motion court did not err in denying an evidentiary hearing for the Rule 24.035 motion. The record conclusively shows Movant is entitled

---

had disapproved of the group plea practice in *Guynes v. State*, 191 S.W.3d 80, 83 n. 2 (Mo. App.2006), and recommending that group guilty pleas be discontinued; concluding that the post-conviction movant was not entitled to relief because the record showed her plea was voluntary); *Elverum v. State*, 232 S.W.3d 710, 712 n. 4 (Mo.App.2007) (reiterating that *Guynes* had determined that group guilty pleas are not ideal and should be discontinued).

Although this Court is not persuaded by Movant's arguments suggesting that group pleas should be deemed automatically invalid or declared impermissible, group pleas are not preferred procedure and should be used sparingly.

Comparatively, other states' courts also have criticized the use of group pleas but also have not invalidated them. *See, e.g., Howell v. State*, 185 S.W.3d 319, 332–34 (Tenn.2006) (cautioning against the use of group guilty pleas in the context of "package-deal" pleas but noting that such plea procedures are val-

id; noting other cases finding that package deal plea arrangements are not invalid per se); *Cazanas v. State*, 270 Ga. 130, 508 S.E.2d 412, 415 (1998) (Sears, J., concurring) (noting a belief "that a group guilty plea hearing is an inappropriate forum for a trial court to accept a defendant's plea of guilty to a serious charge" and that "a trial court should engage in a one-on-one colloquy with [the] defendant, thereby better ensuring the constitutional integrity of the plea-making process."); *State v. Verdin*, 845 So.2d 372, 376–77 (La.Ct.App. 2003) (noting the use of group pleas and stating that personal pleas are preferred but group pleas are not invalid).

6. This conclusion that Movant is entitled to an evidentiary hearing makes no determination about whether he will be ultimately entitled to post-conviction relief. Movant will bear the burden of showing he is entitled to relief at his evidentiary hearing.

to no relief because the plea was voluntary and counsel was not ineffective. When the court finds the record "*conclusively* show[s] that the movant is entitled to no relief, a[n] [evidentiary] hearing shall not be held." Rule 24.035(h) (emphasis added).

## I. The Plea Agreement

Movant argues that his plea agreement was involuntary because he believed that in exchange for his plea to a fourteen year sentence, the State would not oppose institutional treatment. The State's position is that institutional treatment would not be opposed *if recommended* in the sentencing assessment report.

Movant relies solely on his counsel's recollection of the plea agreement, which was based on a memorandum counsel drafted and placed in Movant's file stating "[n]o opposed 120 intensive treatment program" and a handwritten note to Movant stating "I got you an offer for fourteen (14) years with no opposition to your receiving drug and alcohol treatment." Neither written document refers to an "if recommended" condition, but the documents' terms are not necessarily inconsistent with such a condition.

The record conclusively refutes Movant's claim. The only recorded recitation of the plea agreement is the plea hearing transcript. At that hearing, Movant acknowledged the plea agreement as subject to the "if recommended" condition. The record from the plea hearing states:

THE COURT: Mr. King and Mr. Dudley, what plea bargain agreement do you have in Mr. Roberts' case?

MR. KING [Assistant Prosecutor]: On Counts I and II, the State will recommend seven years on each count to run consecutive, for a total of fourteen years.

Both sides free to argue following an S.A.R. [sentencing assessment report]. The remaining counts to be dismissed. The State agreed not to oppose I.T.C. [institutional treatment] if it's recommended.

MR. DUDLEY [Defense Counsel]: That's correct, Judge.

Q. (By the Court): Do you understand that agreement, Mr. Roberts?

A. [Defendant Roberts] Yes, sir.

Q. Do you have any questions about it at all?

A. (Defendant Roberts): No

Despite the fact this was a group plea, the record clearly shows that when Movant's plea agreement was discussed, Movant was addressed individually and indicated he understood the terms of the plea agreement. Neither Movant nor his counsel objected to the terms as stated or sought to withdraw the plea agreement at the plea hearing.

At the sentencing hearing, the attorneys and trial judge engaged in a lengthy discussion about the terms of the plea agreement and the fact that institutional treatment was not recommended in the sentencing assessment report. Although counsel noted he "had I.T.C. as part of my deal," counsel never disputed that it was *not* conditional upon the sentencing assessment report's recommendation. The applicable portion of the record from the sentencing hearing states:

THE COURT: For the record the Court calls the case of State of Missouri versus Gary G. Roberts, 06SF–CR00067. The State appears by Assistant Prosecuting Attorney, Pat King. The defendant is present in person and with counsel, Mr. Blake Dudley.

This matter is before the Court today for formal sentencing. A sentencing as-

sessment report has been filed herein by the Board of Probation.

Mr. Roberts, have you had a chance to go over your sentencing assessment report?

THE DEFENDANT: Yes, sir.

THE COURT: Is there anything contained in that report that you feel is factually incorrect and you would not wish me to consider here today?

THE DEFENDANT: No, sir.

THE COURT: Is that your understanding also, Mr. Dudley?

MR. DUDLEY: There is an error, Judge, on page two of the report, listing the date of 8–25–06. It says "investigation only." And I believe it's referring to this case. I'm sorry. It's just kind of confusing to me, Judge, as to how they listed it. I believe they're referring to this offense. It's the last entry.

THE COURT: That's just in reference to this present case?

MR. DUDLEY: I believe so, sir.

THE COURT: Anything else?

MR. DUDLEY: No, sir.

THE COURT: Let the record reflect that I have reviewed this prior to today, subject to corrections or comments. The report has recommended that probation be denied.

Any comment the State wishes to make on the report itself or disposition?

MR. KING: *Yes, Your Honor. I am going to recommend that you sentence Mr. Roberts to seven years on Count I, seven years on Count II, all consecutive, for a total sentence of fourteen years in the Department of Corrections.*

*I do not see I.T.C. recommended.*

MR. DUDLEY: *Judge, I had I.T.C. as part of my deal with Mr. Bryant.*

MR. KING: I don't see it recommended though.

MR. DUDLEY: It wasn't recommended. It was not oppose.

MR. KING: It was not recommended.

MR. DUDLEY: Well, that's true.

THE COURT: Yes, it's not a recommendation that was made by the probation office.

MR. KING: I do think there is a note here that indicates that it's—that this sentence is to run concurrent with any sentence he may have received in Wayne County. And I don't know if he's received that sentence or not.

MR. DUDLEY: I would be glad to address and clarify things, Judge.

THE COURT: Well, there was a reference that he was to enter a plea yesterday, I believe, in Wayne County. Did that take place?

MR. DUDLEY: He pled guilty and was sentenced to ten years and was sentenced to 120–day with I.T.C.

THE COURT: Well, there is a difference here, because it was not recommended in this report. I want to make sure. Bottom of page three it does say, "bed date, institutional bed date."

But they do that. They get the date. But this is not recommended.

MR. DUDLEY: His bed date has been scheduled for about two months already, Judge.

MR. KING: *Well, Judge, if you interpret that to mean they are recommending it. And, you know,—*

THE COURT: *No, I do not, because it would be marked under this second box where it says, "deny probation, consideration for institutional program placement." I believe this is clearly just a deny probation recommendation.*

MR. KING: Well, that was the way I saw it, Judge.

THE COURT: But I think they give you a bed date in case I want to do something else. *And I just wanted to make sure that that is clear, that you don't think that that is a recommendation for I.T.C., because it is not.*

MR. KING: *Well, all I'll say for the record, Judge, the plea agreement is that we would not oppose it if it is recommended.*

THE COURT: And it is not. Anything you wish to say on behalf of the defendant?

MR. DUDLEY: Yes, Your Honor. I would ask the Court to take a close look at the dates on the prior offenses that are listed there, Judge.

My client's 55, Judge. His history starts in 1970, 1984. He had a prior offense in 1995. He had a misdemeanor offense. And we [are] here today with this offense.

He also pled guilty and has been sentenced in Wayne County to a ten-year sentence in the Department of Corrections. He does have the bed space arranged there.

Judge, the background and note that you saw in the file was that we were trying to arrange a way for Mr. Roberts to be transported from Wayne County yesterday up to here today. And Wayne County, they told him, well here—we were told that there were no deputies that could get him from Wayne County. The Wayne County court just told Mr. Roberts that he needed to report up here. Otherwise, his chances of the 120–treatment were done.

Judge, if you look at the long history here, my client has never had an opportunity to avail himself of any kind of substance abuse treatment. I don't think they were really promoting it in these earlier offenses that occurred back in the '80's and '70's, in 1970.

Judge, the events that occurred in Wayne County and the events that occurred here in St. Francois County occurred around the same time. My client has not had any substance abuse problems within the last eight to nine months.

His daughter works at Aquinas. In Wayne County they tested him every time before he would report to work. They made it a condition on his bond, Judge.

*We would ask that you give him a chance to do the treatment program, as it's never been provided to him before.* And those offenses that we're talking about in the criminal history portion of the SAR are 25, 30 years old.

THE COURT: Well, this would be his third felony.

MR. DUDLEY: Yes, sir.

THE COURT: And as the writer reports, he was revoked on parole on a previous sell of a controlled substance, felony offense.

MR. DUDLEY: That was 22 years ago, Judge.

THE COURT: I don't care. That's not good. He had an opportunity and didn't take advantage of it before. I don't see any reason why I should give him a chance on probation.

*Did you have a plea bargain?* Is that what you had indicated—seven and seven consecutive? Is that what you were going to be free to argue for?

MR. DUDLEY: *Seven and seven consecutive to each other and then concurrent with his Wayne County case, Judge.*

THE COURT: *Probation is denied. Mr. Roberts, do you know of any legal*

*reason why the Court should not now pronounce sentence upon you?*

THE DEFENDANT: *No, sir.*

THE COURT: As to Count I, it is the sentence, judgment, and order of the Court that the defendant be confined to the State Department of Corrections for a period of seven years for the class C felony, possession of a controlled substance, methamphetamine.

As to Count II, it is the sentence, judgment, and order of the Court that the defendant be confined in the State Department of Corrections for a period of seven years for the class C felony, possession of a controlled substance, Diazepam.

The sentence under Count II is to be served consecutively to the sentence imposed under Count I, and to be endured in such place of confinement as is designated by the State Department of Corrections to whom the defendant is ordered committed.

Court orders that this sentence is to be served concurrently with any sentence imposed out of Wayne County, Missouri.

. . . .

*EXAMINATION OF THE DEFENDANT by the Court:*

Q. State you name for the record, sir.

A. Gary Gene Roberts.

Q. And you are the same Gary Roberts who appeared before me on August 25th, 2006, and pled guilty to these two charges of possession of a controlled substance, class C felonies?

A. Yes.

Q. As a result of those pleas of guilty, you have been sentenced today to seven years on each count to run consecutively to each other but concurrently with your sentence out of Wayne County. *Do you understand your sentence?*

A. *Yes, sir.*

Q. Your attorney has been Mr. Blake Dudley; is that correct?

A. Yes, sir.

Q. Did you have sufficient opportunity to discuss this case with him before you entered your pleas of guilty?

A. Yes, sir.

Q. Did he do everything that you asked him to do prior to your entering your pleas of guilty?

A. Yes, sir.

Q. *Other than the terms of any plea bargain agreement, did your attorney communicate any threats or promises to you to induce you to enter your pleas of guilty?*

A. *No.*

Q. *Are you satisfied with the services rendered to you by Mr. Dudley as your attorney?*

A. *Yes.*

THE COURT: Let the record reflect the Court finds no probable cause of ineffective assistance of counsel exists in this case.

Is there anything else for the record on behalf of the State?

MR. KING: No, Your Honor.

THE COURT: Anything else on behalf of the defendant?

MR. DUDLEY: No, Your Honor.

THE COURT: That's the order of the Court. Take the defendant into custody. Good luck to you, sir.

(Emphasis added).

The sentencing hearing record clearly shows that institutional treatment and probation were not recommended in the sentencing assessment report; that the trial court judge relied upon the sentencing assessment report and Movant's past crimi-

nal record in refusing institutional treatment and probation, without argument by the State; and that Movant received two consecutive seven year sentences, concurrent with the Wayne County sentence, as agreed to in the plea agreement.

Movant was questioned individually again at the sentencing hearing. After hearing all of this, he affirmed his plea; affirmed that he understood his sentence; affirmed that he had sufficient opportunity to discuss his case with his counsel; affirmed that his counsel did everything asked of him; and affirmed that he was satisfied with the service of his counsel. Especially significant, Movant answered "no" when asked "other than the terms of any plea bargain agreement did your attorney communicate any threats or promises to you to induce you to enter your pleas of guilty?"

A plain and simple reading of this record conclusively rebuts Movant's claim that his plea was involuntary.[1]

## II. Effective Assistance of Counsel

An ineffective assistance of counsel claim requires counsel to be deficient and the defendant to be prejudiced. *State v. Roll*, 942 S.W.2d 370, 374–75 (Mo. banc 1997). Trial strategy is not grounds for ineffective assistance of counsel. *Anderson v. State*, 196 S.W.3d 28, 33 (Mo. banc 2006). For a guilty plea, the claim is "limited to whether counsel's actions impinged on the movant's ability to enter a knowing and voluntary plea." *Dorsey v. State*, 115 S.W.3d 842, 845 (Mo. banc 2003). "Mistaken beliefs about sentencing affect a defendant's ability to knowingly enter a guilty plea if the mistake is reasonable and the mistake is based upon a positive repre-

sentation upon which the movant is entitled to rely." *Id.* In *Dorsey*, this Court found the record refuted the ineffective assistance of counsel claim because movant stated "he understood the plea agreement and was satisfied with counsel's representation." *Id.*

Movant argues his counsel did not object to the State's misstatement of the plea agreement and did not seek to withdraw the plea agreement. In light of Movant's own statements on the record, as set out above, there would not be a basis for any such action on the part of counsel.

One further point should be noted. The plea agreement provided a fourteen year sentence for two class C felony drug charges and dismissed four class C felony drug charges. Movant received significant consideration for his plea even if institutional treatment was not included. The decision to accept the terms of the plea agreement as plainly stated in the record was strategic.

## III. Conclusion

The record conclusively shows Movant is entitled to no relief because the plea was voluntary and counsel was not ineffective. An evidentiary hearing for the Rule 24.035 motion should not be held. The motion court did not err in denying the evidentiary hearing.

---

1. Even if there was a misunderstanding between Movant and the State, Movant was not prejudiced. The decision of the trial court had nothing to do with the State's opposition or lack of opposition to institutional treatment, but was based on the sentencing report and Movant's prior record.